**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | No. 14-41322 |
| | ) | |
| KARL ROEMER, | ) | Chapter 13 |
| | ) | Judge Donald R. Cassling |
| Debtor. | ) | |
| | ) | Kane |

**RESPONSE BY HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
IN OPPOSITION TO DEBTOR'S MOTION PURSUANT TO 11 U.S.C. § 362(k)
SEEKING DAMAGES FOR ALLEGED VIOLATIONS OF THE AUTOMATIC STAY**

Respondent Hartford Life and Accident Insurance Company ("Hartford"), by its undersigned counsel, as and for its Response in Opposition to the Motion by Debtor Karl Roemer ("Debtor") pursuant to 11 U.S.C. § 362(k) Seeking Damages for Alleged Violations of the Automatic Stay (the "Motion") (ECF #53), respectfully states as follows:

**PRELIMINARY STATEMENT**

Debtor's Motion accuses Hartford of willfully violating the automatic stay by withholding a portion of Debtor's monthly disability insurance payments in order to recoup a prior overpayment which Debtor was not entitled to receive under the express terms of an employee benefit plan and group insurance policy. According to Debtor, Hartford ignored these bankruptcy proceedings and violated the automatic stay by effectuating the recoupment from his monthly disability payments after the petition date. But the Debtor is wrong *as a matter of law*.

Numerous bankruptcy courts have held in a host of published decisions that (1) an overpayment amount to be recouped from a debtor's monthly disability benefit payment is not property of the debtor's bankruptcy estate, (2) the continued post-petition recoupment of the overpayment is neither a violation of the automatic stay nor the discharge injunction, (3) the

2021436v.1

equitable remedy of recoupment is neither a "claim" nor a "debt" under the Bankruptcy Code, and thus (4) the equitable remedy of recoupment remains unimpaired and unaffected by any proceedings in a bankruptcy case. *See*, *e.g.*, *Brown v. General Motors Corp.*, 152 B.R. 935 (W.D. Wis. 1993).

As more fully shown herein, Debtor's Motion should be denied in its entirety. Quite simply, there can be no claim for damages under Section 362(k) if there is no stay violation in the first place.

## BACKGROUND

Debtor Karl Roemer is a participant in a group long-term disability plan sponsored and maintained by his employer, Securitas Security Services USA, Inc. (the "LTD Plan") underwritten by Hartford in a group insurance policy (the "Group Policy"). Attached hereto as **Exhibit A** is a true and correct copy of the Certificate of Insurance for the Group Policy.

Prior to his bankruptcy filing, Debtor applied for and received disability benefits under the LTD Plan which were paid monthly by Hartford. According to Debtor, he stopped working due to a disability in August 2009 through early 2012, during which time Hartford approved and paid him monthly LTD benefits under the Group Policy. *See Motion* at ¶¶1-12. Debtor then filed another disability claim in 2012, and Hartford again approved his claim and in May 2012 began paying him monthly LTD benefits under the Group Policy. *Id.* at ¶¶13-14.

At some point, Debtor also successfully applied for social security disability ("SSD") benefits from the federal government and started to receive monthly SSD benefit payments, as well as the monthly benefit payments paid by Hartford under the Group Policy. Pursuant to the express terms of the LTD Plan and the Group Policy, the computation of the Debtor's monthly LTD benefit payment must be reduced by "Other Income Benefits" which is defined to include

2

any SSD benefit payments. Ex. A at 18. Accordingly, Debtor's receipt of both monthly LTD benefits and monthly SSD payments without any reduction of the LTD benefits to account for the SSD payments meant that Debtor received an overpayment to which he was not entitled under the terms of the LTD Plan and Group Policy.

As alleged in the Motion, upon learning of Debtor's receipt of the SSD award (which Debtor was obligated to report under the Group Policy), Hartford notified Debtor of the overpayment and began reducing his monthly LTD benefit payment by $986.57 per month in order to recoup the overpayment that Debtor was not entitled to receive. To date, Hartford has recouped $6,905.99 of the overpayment (*i.e.*, $986.57 per month for seven months), leaving a balance of $5,824.17 remaining on the overpayment.

The sole issue before the Court is whether Hartford's post-petition recoupment of the overpayment from Debtor's monthly LTD benefits violates the automatic stay. For the reasons set forth below, and as recognized by numerous bankruptcy courts across the country, the recoupment of Debtor's pre-petition benefit overpayments from the Debtor's post-petition benefit payments is neither a violation of the automatic stay nor in any way impaired by this bankruptcy case. Therefore, Debtor's Motion should be denied in its entirety.

## ARGUMENT

### A.  Hartford's Exercise of Its Right of Recoupment Does Not Violate the Automatic Stay

In order to prove a violation of § 362(k)(1) of the Bankruptcy Code, a debtor must prove by a preponderance of the evidence: "(1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." *Slabicki v. Gleason (In re Slabicki)*, 466 B.R. 572, 577-78 (1st Cir. 2012) (citations

3

omitted). Here, Debtor cannot meet his burden of proof and his Motion must be denied as a matter of law.

Nowhere in his Motion does Debtor dispute: (1) that Debtor's right to receive LTD benefits is governed by the LTD Plan and Group Policy; (2) that the Debtor received SSD benefits which caused an overpayment of LTD benefits to which Debtor was not entitled under the terms of the Group Policy; or (3) that Hartford is entitled to recoup the overpayment from future LTD benefit payments under the terms of the Group Policy. These facts are a given. Under substantially similar circumstances, numerous courts have squarely addressed this issue and found that a group benefits insurer, such as Hartford, may properly recoup pre-petition benefit overpayments from post-petition amounts owed to the debtor, and that such recoupment does not violate the automatic stay.

Recoupment is a common law doctrine that involves the "setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." 4 *Collier on Bankruptcy* §553.03 at 553-15-17. *See also Brown v. General Motors Corp.*, 153 B.R. 935, 938 (W.D. Wis. 1993) ("[r]ecoupment is an equitable defense which enables a defendant to reduce liability on a plaintiff's claim by asserting an obligation of the plaintiff which arose out of the same transaction.").

Because it carries no right to payment, recoupment is not a "claim" within the meaning of 11 U.S.C. § 101(5). *Brown*, 153 B.R. at 938. Further, "[i]t naturally follows that the potential assertion of recoupment against a claim by the debtor does not constitute a 'debt' within the meaning of 11 U.S.C. § 101(12), which defines debt as 'liability on a claim.'" *Id*.

Thus, because recoupment is neither a claim nor a debt, but rather an equitable remedy or defense, a party asserting recoupment need not file a proof of claim or commence a

4

2021436v.1

dischargeability proceeding. *Sigman v. Aetna Life Ins. Co. (In re Sigman)*, 270 B.R. 858, 861 (Bankr. S.D. Ohio 2001). *See also Pucci v. Liberty Mutual Group, Inc. (In re Pucci)*, 2009 Bankr. LEXIS 5543, at *22 (Bankr. W.D. Penn. 2009) ("A trustee in bankruptcy takes property of the bankruptcy estate 'subject to the rights of recoupment.'").

Likewise, "[s]ince the right of recoupment is not a claim and its potential assertion is not a debt, the right is unaffected by a discharge in bankruptcy which operates as an injunction against action to collect any *debt* discharged under § 727." *Brown*, 153 B.R. at 938 (*citing* 11 U.S.C. § 524(a)(2) (emphasis in original)). Simply put, "a properly asserted right of recoupment is unaffected by bankruptcy" and, as a matter of policy, prevents a debtor "from obtaining the benefits of a contract without accepting its burdens." *Brown*, 153 B.R. at 938-39.

Of course, recoupment is not the same as set-off, and the distinction between the two is important in bankruptcy. *In re Sigman*, 270 B.R. at 860. Unlike recoupment, set-off is specifically defined and limited by the Bankruptcy Code, 11 U.S.C. § 553(a), and unlike recoupment, a set-off is subject to the automatic stay of 11 U.S.C. § 562(a)(7). *Id.* (*citing Aetna Life Ins. Co. v. Bram (In re Bram)*, 179 B.R. 824 (Bank. E.D. Tex. 1995).[1]

Here, Debtor's right to continued monthly LTD benefits, and Hartford's right to recoup the prior overpaid LTD benefits, both arise out of the same contract or transaction, which entitles Hartford to exercise its recoupment remedy. The Group Policy is the basis for both Debtor's right to LTD benefits in the event of his disability and Hartford's right to reduce Debtor's future benefit payments in the event of an overpayment.

---

[1] A set-off is "usually asserted for the purposes of reducing or extinguishing a mutual debt arising from different transactions," *In re Sigman*, 270 B.R. at 860, and "is in the nature of a counterclaim, enabling a creditor to reduce the amount of a claim against it by an amount owed to the creditor on a mutual unrelated debt," *In re DeLotto*, 2015 Bank. LEXIS 3846, at *13 (internal quotes and citations omitted).

5

Specifically, the Group Policy provides that a participant will be paid a monthly LTD benefit if:

> 1. You become Disabled while insured under this plan;
> 2. You are Disabled throughout the Elimination Period;
> 3. You remain Disabled beyond the Elimination Period;
> 4. You are, and have been during the Elimination Period, under the Regular Care of a Physician; and
> 5. You submit Proof of Loss satisfactory to us.
>
> Benefits accrue as of the first day after the Elimination Period and are paid monthly.

Ex. A at 6.

Assuming the participant establishes the criteria and is found to be "Disabled," the Group Policy further provides the method to calculate his monthly LTD benefit:

> If You are Disabled and not receiving benefits under the Return to Work Incentive, we will calculate Your Monthly Benefit as follows:
>
> 1. multiply Your Monthly Income Loss by the Benefit Percentage;
> 2. compare the result with the Maximum Benefit; and
> 3. from the lesser amount, ***deduct Other Income Benefits***.
>
> The result is Your Monthly Benefit.

Ex. A at 7 (emphasis added).

As is pertinent here, "Other Income Benefits" is defined as:

> "[T]he amount of any benefit for loss of income, provided to you or to your family, as a result of the period of Disability for which you are claiming benefits under this plan. This includes any such benefits for which you or your family are eligible or that are paid to you, to your family or to a third party on your behalf, pursuant to any… 5. ***disability benefits under: a) the United States Social Security Act*** or alternative plan offered by a state or municipal government…."

Ex. A at 18 (emphasis added).

Accordingly, the Group Policy makes clear that an overpayment of LTD benefits occurs "when we determine that the total amount we have paid in benefits is more than the amount that

6

was due to You under the plan….” Ex. A at 14.  Such an overpayment may include:  "1. retroactive awards received from sources listed in the Other Income Benefits definition; 2. failure to report, or late notification to us of any Other Income Benefit(s) or earned income; 3. misstatement; 4. fraud; or 5. any error we may make." Ex. A at 15.

Likewise, the Group Policy specifically authorizes Hartford to recoup any overpayment of LTD benefits.  When Hartford determines that there has been an overpayment of benefits such as by the receipt of Other Income Benefits like an SSD award, it may recover that overpayment from the participant as follows:

> **How does Hartford Life exercise the right to recover overpayments?**
>
> We have the right to recover from You any amount that we determine to be an overpayment. You have the obligation to refund to us any such amount. Our rights and Your obligations in this regard may also be set forth in the reimbursement agreement You will be required to sign when You become eligible for benefits under this Plan.
>
> If benefits are overpaid on any claim, You must reimburse Hartford Life within 30 days.
>
> ***If reimbursement is not made in a timely manner, Hartford Life has the right to:***
>
> 1. recover such overpayments from Your estate;
> 2. ***reduce or offset against any future benefits payable to You or Your survivors, including the Minimum Monthly Benefit, until full reimbursement is made.*** Payments may continue when the overpayment has been recovered;

Ex. A at 15 (emphasis added).

Based on the plain and unambiguous terms of the Group Policy, it is clear that Hartford is expressly authorized to recoup the $12,730.16 in overpaid LTD benefits by reducing the future LTD benefits that Hartford owes to Debtor until the overpayment is fully reimbursed.

7

2021436v.1

Significantly, numerous federal courts that have addressed this issue have held that the post-petition recoupment of a disability insurance overpayment neither violates the automatic stay nor the discharge injunction. *See, e.g., Brown v. General Motors Corp.*, 152 B.R. 935, 938 (W.D. Wis. 1993) ("the Court finds that plaintiff's bankruptcy discharge has no effect on the continuing right of the Pension Plan to recoup overpayments from future [disability] benefits"); *In re Hiler*, 99 Bank. 238, 243 (Bankr. D. N.J. 1989) (the group disability benefit plan "has a valid right of recoupment with regard to the overpayments made to the Debtor, and … such right is not subject to the automatic stay"); *In re Sigman*, 270 B.R. 858, 860-62 (Bankr. S.D. Ohio 2001) (debtor's motion for sanctions for alleged violations of the automatic stay and discharge injunction denied; court found disability overpayment is subject to recoupment); *In re Lord*, 284 B.R. 179 (Bankr. D. Mass. 2002) (motion to enforce automatic stay denied; "[c]ourts frequently permit insurers to recoup pre-petition overpayments from post-petition amounts owed to debtors"); *In re Jones*, 289 B.R. 188, 191 (Bankr. M.D. Fla. 2002) (same); *In re Graves*, 234 B.R. 149, 150 (Bankr. M.D. Fla. 1999) (same); *In re Bram*, 179 B.R. 824, 826 (Bank. E.D. Tex. 1995) (same); *In re Pucci*, 2009 Bank. LEXIS 5543, *14-27 (Bankr. W.D. Penn. 2009) (same); *In re DeLotto*, 2015 Bankr. LEXIS 3846 (Bankr. D.R.I. 2015) (same).

As such, the case law makes it overwhelmingly clear that Hartford's recoupment of the disability overpayment from Debtor's right to receive future disability benefits is not a violation of the automatic stay. Because recoupment is not a stay violation as a matter of law, Debtor's Motion for the imposition of sanctions for the alleged stay violation must be denied.[2]

---

[2] Because there was no stay violation as a matter of law, there is no need to address Debtor's purported damages as alleged in the Motion. In the event such becomes necessary, Hartford hereby reserves all of its rights to conduct discovery under the applicable provisions of the Bankruptcy Code and Rules.

### B. Debtor's Chapter 13 Plan Has No Impact On Hartford's Right of Recoupment

Perhaps knowing that the case law weighs decidedly against him, Debtor attempts an end-run around Hartford's recoupment rights by asserting that Hartford's sole remedy is to file a proof of claim and then recover "through a distribution from the Chapter 13 Trustee per the Debtor's confirmed plan." Motion, at ¶59. Indeed, Debtor's counsel went so far as to file a stealth general unsecured proof of claim on behalf of Hartford for the overpayment amount then owed after it became obvious that Hartford had no intention of participating in Debtor's bankruptcy case but rather would rely on its recoupment rights. *See* Motion ¶¶ 34, 45; ECF Claim 6-1. Apparently, Debtor and his counsel believe that the LTD benefit overpayment should be reimbursed to Hartford as an unsecured claim in less than the full amount over five years in accordance with the chapter 13 plan rather than in full through Hartford's right of recoupment. No legal authority is cited for this novel theory.

Debtor's effort to force Hartford into his chapter 13 plan just like his other unsecured creditors must fail for several reasons. First, as already noted above, the overpayment amount subject to recoupment is neither a claim, nor a debt, nor even property of Debtor's bankruptcy estate. As such, there was no need for Hartford to file a proof of claim to preserve its recoupment rights. *See In re Sigman*, 270 B.R.at 862 ("Since recoupment is neither a claim [n]or a debt that is dischargeable, Aetna had no obligation to file a proof of claim or to commence a dischargeability proceeding."). Consequently, Debtor's filing of an unsecured claim on behalf of Hartford was a nullity. Debtor cannot convert, through alchemy or otherwise, an equitable remedy that exists outside of bankruptcy into an unsecured claim subject to the bankruptcy simply by calling it such. Nor can Debtor transform an equitable remedy that is not property of the estate into property that is subject to his chapter 13 plan simply by calling it a claim. *See*,

9

*e.g.*, *In re Stratman*, 217 B.R. 250, 253 (Bankr. S.D. Ill. 1998) (chapter 13 debtor's alleged stay violation motion denied; the recoupment of a pre-petition unemployment benefit overpayment from post-petition unemployment benefit payments was not a violation of the automatic stay and not subject to the debtor's chapter 13 plan even though the overpayment was listed as an unsecured claim in debtor's Schedule F and provided for in her confirmed plan).

Second, there are sound policy reasons that exist to support the continued viability of the recoupment doctrine in bankruptcy. In addition to recognizing that recoupment is not a claim or debt, many courts have also recognized that the principles underlying recoupment are similar to those underlying the treatment of executory contracts in bankruptcy. As explained by one court:

> As a matter of policy, the distinction between recoupment and other claims or set-offs against the debtor is sound. Since recoupment is applicable only to a single contract [or transaction], it applies to prevent the debtor from obtaining the benefits of a contract without accepting its burdens. Permitting recoupment is consistent with the bankruptcy policy of requiring that executory contracts be assumed or rejected in whole. *In re Crippin*, 877 F.3d 594, 597 (7th Cir. 1989). Numerous courts have recognized this principle as a basis for permitting recoupment.

*Brown v. General Motors Corp.*, 152 B.R. 935, 938 (W.D. Wis. 1993). *See also In re Hiler*, 99 B.R. at 244 and cases cited therein.

Here, Debtor desires to receive continued disability benefits from the LTD Plan and the Group Policy, and yet Debtor does not want the burden of having his continued disability benefit payments adjusted to account for the prior overpayment. In effect, this would allow Debtor to "pick and choose" the provisions of the LTD Plan and Group Policy which he wishes to accept and reject. *Hiler*, 99 B.R. at 244. "To allow the Debtor to side-step the [LTD] Plan's right [of recoupment] would unjustly enrich [Debtor's] estate as well as provide a windfall to all the other creditors at the expense of the [LTD] Plan." *Id.* at 245. While Debtor may truly believe that his circumstances are unfortunate, the courts have made clear that Hartford's exercise of its

10

recoupment rights "does not offend notions of equity and fairness." *In re DeLotto*, 2015 Bankr. Lexis 3846, *42 (Bankr. D.R.I. 2015).

## CONCLUSION

WHEREFORE, Respondent Hartford Life and Accident Insurance Company respectfully requests that this Court deny Debtor's Motion pursuant to 11 U.S.C. § 362(k) Seeking Damages for Alleged Violations of the Automatic Stay (ECF #53), and award to Hartford such other and further relief as the Court deems just and appropriate.

Dated:  January 15, 2016                    Respectfully submitted,

**Hartford Life and Accident Insurance Company, Respondent**

By: */s/ Jason M. Kuzniar*  _____
       One of their attorneys

Jason M. Kuzniar (IL 6270123)
WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER LLP
55 W. Monroe St., Suite 3800
Chicago, IL 60603
Tel: 312-704-0550
Fax: 312-704-1522
jason.kuzniar@wilsonelser.com

2021436v.1

## **CERTIFICATE OF SERVICE**

      The undersigned, an attorney, hereby certifies that on January 15, 2016, the above and foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and that a true and correct copy was served on the parties or attorneys of record via the Court's CM/ECF Electronic Notification.

                                                      */s/ Jason M. Kuzniar*

2021436v.1